IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MONTE GRANT                              §
TDCJ-CID NO.1032333,                     §
        Petitioner,              §
v.                                       §          CIVIL ACTION NO. H-05-1760
NATHANIEL QUARTERMAN,[1]                 §
        Respondent.              §

OPINION ON DISMISSAL

      Petitioner Monte Grant, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction for aggregate theft. (Docket Entry No.1). Respondent filed a motion for summary judgment, arguing that petitioner is not entitled to habeas corpus relief under § 2254. (Docket Entry No.17). Petitioner has not filed a response to the motion for summary judgment. After considering all the pleadings, motions, the relevant state court records, and the applicable law, the Court will grant respondent's motion for summary judgment and dismiss this case.

I. FACTUAL AND PROCEDURAL HISTORY

      A Texas grand jury indicted petitioner in cause number 853002, charging him with aggregate theft. The State enhanced the indictment for purposes of punishment with allegations of two prior felony convictions. (Docket Entry No.18, Part 25, page 3; *Ex parte Grant*, No. 13,744-03, Clerk's Record at 117). A jury convicted petitioner as charged on the following evidence, as summarized by the intermediate appellate court, which affirmed petitioner's conviction:

---

[1]   Petitioner named Douglas Dretke, Director of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), as respondent. On June 1, 2006, Nathaniel Quarterman succeeded Dretke as Director; therefore, the Court ORDERS the Clerk to substitute Nathaniel Quarterman as respondent in this case.

In October 1998, Jack Burchfield was the owner of property located at 131 Moss Point Drive, Houston, Texas. Some time thereafter, when he went to close on a sales contract for this property, Chicago Title Insurance Company ("Chicago Title") informed Burchfield there was a problem. Chicago Title told him that the property had already been sold in October 1998.

In this transaction, appellant [petitioner] acted as the seller/owner, and Michael Williams acted as the buyer. Tracy Swerdlin, an escrow officer for Chicago Title, worked on this transaction. Appellant brought Swerdlin an earnest money contract signed by appellant and Williams. In the Galveston County clerk's records there was a warranty deed purportedly signed by Burchfield transferring title of the property from Burchfield to appellant. This deed, however, lacked a legal description of the property. Swerdlin contacted appellant and told him that they needed to get the original warranty deed and bring it to the courthouse so the legal description of the property could be filed. Appellant gave Swerdlin what he claimed was Burchfield's telephone number, but Swerdlin was unable to contact Burchfield. Swerdlin called appellant again letting him know she could not get in touch with Burchfield. Soon thereafter, someone who identified himself as Burchfield contacted Swerdlin.

Swerdlin instructed this individual that she was going to send him an affidavit and he should sign it, have it notarized, and return it to her. The individual told Swerdlin where to send the affidavit. The affidavit was returned to Swerdlin via mail, purportedly signed by Jack Burchfield. Thereafter, appellant brought Swerdlin the original warranty deed, and he and Williams closed on the property on October 14, 1998. Appellant told Swerdlin that he did not trust Williams and did not want him around when he received the check because he feared Williams might hit him over the head and take the check from him, so appellant picked up his check for $52,258.74 the day after closing. Immediately upon receipt, appellant cashed that check.

\* \* \* \* \* \*

On May 29, 1998, Debra Rips owned property located at 102 Diamond Lane, Friendswood, Texas. She became aware of a problem with the property when an investigator contacted her saying she no longer owned the property.

This transaction involved Texas American Title Company ("Texas American Title") and was structured much like the Chicago Title transaction, with appellant acting as the seller/owner, and Williams acting as the buyer. A warranty deed purportedly signed by Rips was filed on April 8, 1998, transferring title of the property from Rips to appellant. On April 13, 1998, appellant went to Texas American Title with an earnest money contract signed by appellant and Williams. Appellant and Williams closed on the property on May 29, 1998. Appellant picked up a check for $75,117.74, and cashed it on June 3, 1998, at a check-cashing facility

regularly investigated by the Harris County District Attorney's Office for its check-cashing operations.

\* \* \* \* \* \*

During the punishment phase of the trial, appellant confessed that he was guilty of the charged offense. Appellant testified that (1) he was involved in the transactions with Williams, (2) he knew it was unethical, (3) he forged documents, (5) [sic] he cashed the check and gave the money to Williams, and (6) the escrow officer testified truthfully regarding the events.

(Docket Entry No.18, Part 53, pages 40-41, Part 54, page 2-3); *Grant v. State*, No.14-01-00475-CR (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd) (footnote and headings omitted). Petitioner stipulated to the enhancement paragraphs and the jury assessed an enhanced punishment of thirty-two years confinement in TDCJ-CID. (Docket Entry No.18, Part 25, page 8).

On appeal, petitioner's appointed attorney challenged the conviction on the legal and factual sufficiency of the evidence to support the conviction. (*Id.*, part 51, pages 16-25). The state intermediate court of appeals affirmed petitioner's conviction in an unpublished opinion and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Docket Entry No.18, Part 53, pages 40-41, Part 54, page 1-7); *Grant v. State*, No.14-01-00475-CR (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd).

Petitioner filed a state application for writ of habeas corpus in the state district court. (Docket Entry No.18, Parts 22, 23, 24; *Ex parte Grant*, No. 13,744-03, pages 2 - 83). The state district court entered findings of fact and conclusions of law, recommending that habeas corpus relief be denied. (*Id.*, Part 24, page 30-31). The Texas Court of Criminal Appeals agreed and denied state habeas corpus relief on the findings made by the trial court without a hearing. (*Id.*, Part 22, page 3; *Ex parte Grant*, No. 13,744-03 at cover).

In the pending petition, petitioner claims he received ineffective assistance of counsel at trial and on appeal. Petitioner also claims that the State withheld exculpatory material from the defense.

3

Petitioner further seeks federal habeas relief on grounds that he received an illegal sentence due to the improper submission, without objection, of the enhancements and the erroneous advice of trial counsel, as they were state jail felonies and barred by article 12.35 of the Texas Code of Criminal Procedure.  (Docket Entries No.1, No.4).

Respondent has filed a motion for summary judgment, arguing that petitioner's claims fail as a matter of law, (Docket Entry No.17).

II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000).   In this case, petitioner presented claims in a petition for discretionary review and in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner on a petition for discretionary review or in a state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness."  *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).  Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d

5

77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers.").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III. ANALYSIS

### A. Evidentiary Error and Illegal Sentence Via Erroneous Use of Enhancements

Petitioner contends that his thirty-two year sentence is illegal because it exceeds the statutory limit of twenty years for aggregate theft. (Docket Entry No.4, Part 2, page 33). Petitioner maintains that the two prior convictions used to enhance his sentence were state jail felonies and could not be used for enhancement of his sentence under section 12.42(e) of the Texas Penal Code.[2] (*Id.*).

The state habeas court found that because the enhancement paragraphs alleged that petitioner was convicted for offenses prior to September 1, 1994, petitioner fails to show that his sentence was improperly enhanced with state jail felonies. (Docket Entry No.18, Part 24, page 30). The record supports the state habeas court's finding. The record shows that petitioner's sentence for aggregate theft was enhanced by a 1981 conviction for unauthorized use of a motor vehicle and a 1984 conviction for the same offense. (Docket Entry No.18, Part 25, page 3). Although under current law, an offense for unauthorized use of a motor vehicle is a state jail felony, punishable by no more than two years confinement, TEX. PEN. CODE ANN. § 12.35 (a) (Vernon 2003); such was not the case

---

[2]   Section 12.42(e) of the Texas Penal Code provides the following, in pertinent part: "A previous conviction for a state jail felony punished under Section 12.35(a) may not be used for enhancement purposes under Subsection (b), (c), of (d). TEX. PEN. CODE ANN. § 12.42 (Vernon Supp. 2006).

in 1981 and 1984, when petitioner was convicted of these offenses.  At that time, the offense of

unauthorized use of a vehicle was a third degree felony; *see* Act of June 19, 1993, 73rd Leg., R.S.,

ch. 900, § 101, 1993 TEX. GEN. LAWS 3643 (amended 1993) (current version at TEX. PEN. CODE

ANN. § 31.07(b) (Vernon 2003), punishable by confinement of not more than ten years or less than

two. *Id.* § 12.34(a).

Because petitioner's prior convictions were felony offenses and not state jail felonies, section

12.42(e) of the Texas Penal Code does not bar their use for enhancement purposes.  Accordingly,

petitioner fails to show that his sentence was unlawfully enhanced.

B. Ineffective Assistance of Counsel at Trial

The State habeas court found that petitioner failed to allege sufficient facts, which, if true,

would entitle him to relief for ineffective assistance of counsel in trial.  (Docket Entry No.18, Part

24, page 30).  Respondent moves for summary judgment on the ground that petitioner has failed to

show that the State court's findings are factually or legally unreasonable under the AEDPA standard.

Respondent maintains that petitioner's claims are without factual support and are conclusory.

(Docket Entry No.17).  Respondent claims that "[w]ith few exceptions, [petitioner] backs up not one

of his allegations with factual or documentary evidence in substantiation."  (*Id.*, page 10).  The

record supports the state habeas court's findings.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the

right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus

petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard

set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance

of counsel claim, petitioner must establish that his counsel's performance was deficient and that the

deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing

*Strickland*, 466 U.S. at 692).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).  "'In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, [the Court can find] no merit to these [claims].'"  *Id.* quoting *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir.1992).

Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.  *Id.*  Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair."  *Pratt v. Cain*, 142 F.3d

226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Plaintiff fails to overcome the state habeas court's finding with respect to his claim that trial counsel Ronald Hayes rendered constitutionally ineffective assistance, as follows:

a. Probable Cause

Petitioner contends that Hayes did not raise issues via presentations or oral arguments and substantiating documents such as affidavits, testimonies, documents, finger print analysis, which would negate a finding of probable cause to hold over the cause for trial.  (Docket Entry No.4, part 1, page 23).  Petitioner does not state whose affidavit, and what documents Hayes should have presented to the state district court before trial, which would negate a finding of probable cause to proceed to trial.  Accordingly, this claim is conclusory and subject to dismissal.

b. Motions

Petitioner maintains that Hayes did not challenge the State's cause before trial by filing a motion to quash the indictment, a motion to dismiss, a motion *in limine*, a motion for discovery, a motion for a speedy trial, and a motion to appoint an investigator, even though petitioner asked him to file such motions. (*Id.*). Petitioner fails to state any facts that would show the necessity for filing a motion to quash the indictment and he mis-states the record. Hayes filed several motions in a related prior cause and a "Motion to Adopt Prior Motions, Filings, Records, and Notices," after petitioner was indicted for the present offense and the prior cause was dismissed.[3] (Docket Entry No.18, Part 15, pages 10-12). The Motion to Adopt Prior Motions was granted. (*Id.*).

Petitioner also complains that Hayes not only failed to file a motion for a speedy trial but that he failed to address or investigate whether petitioner's right to a speedy trial was violated. (Docket Entry No.4, Part 2, pages 27-28). Petitioner contends that he "vehemently and repeatedly expressed [his] views that [his] substantial rights had been infringed upon via [his] denial to a speedy trial." (*Id.*, page 26). He claims that he was held in the Harris County Jail for 365 days before trial, that Hayes did not ask for a bond reduction, and Hayes informed him that there was "no speedy trial in Texas." (*Id.* page 28). Petitioner claims he was harmed by the delay in the trial because his short term memory was failing due to his drug use. (*Id.*).

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. The criteria for assessing a speedy

---

[3]   The record shows that the grand jury indicted petitioner with aggregate theft in cause number 826789. (Docket Entry No.18, Part 15, page 8). Hayes was appointed to represent petitioner. (*Id.*, page 9). Hayes filed several motions in cause number 826789 including a Motion for Discovery (*id.*, pages 10-17), three motions *in limine* (*id.*, pages 18 -21, 36-38), the Defendant's List of Potential Witnesses and Request for Notice of Intent to Use Impeachment Evidence (*id.*, pages 23-24), and several requests for notice of intent to introduce certain types of evidence. (*Id.*, pages 25, 26-27, 30-31). On August 15, 2000, the grand jury indicted petitioner on a charge of aggregate theft in cause number 853002. (*Id.*, page 7). On September 15, 2000, Hayes filed a motion to dismiss the criminal offense charged in cause number 826789, which the state district court granted. (*Id.,*Part 16; page 2). On September 18, 2000, Hayes filed a "Motion to Adopt Prior Motions, Filings, Records, and Notices" in the present cause. (*Id.*, pages 10-12).

trial claim is set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Under *Barker*, a court must consider the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Id.*

Petitioner was arrested in March, 2000 (Docket Entry No.4, Part 1, page 7) on an indictment in cause number 826789. (Docket Entries No.18, Part 16, page 3; Part 15, page 8). The indictment in cause number 826789 was dismissed on September 15, 2000. (*Id.*, Part 16, page 4). On August 16, 2000, petitioner was indicted for aggregate theft in the present cause. (*Id.*, Part 17, page 13; Part 15, page 2). Trial commenced on March 5, 2001. (*Id.*, Part 17, page 13).

The record does not reflect any reason for the delay in bringing petitioner to trial or that petitioner or Hayes asserted petitioner's right to a speedy trial. Furthermore, the record does not reflect that petitioner was prejudiced by the delay. Petitioner's trial testimony and his pleadings show that he has not forgotten many, if any, details of the offense or trial. Petitioner fails to demonstrate a speedy trial violation; accordingly, he fails to show that Hayes was ineffective because he did not investigate or file a motion for a speedy trial.

c. Failure to Object to Continuances

Petitioner complains that Hayes did not even object to the State's repeated motions for continuance. (Docket Entry No.4, Part 1, page 23). Petitioner fails to show how he was prejudiced by this alleged failure to object.

d. Perjury

Petitioner contends that Hayes "perjured himself" to petitioner and to the Court. (Docket Entry No.4, Part 1, page 24). A person commits perjury under state law if, with intent to deceive and with knowledge of the statement's meaning, he makes a false statement under oath or swears

to the truth of a false statement previously made and the state is required and authorized by law to be made under oath.  TEX. PEN. CODE ANN. § 37.02 (Vernon 2003).

In a sworn statement (Docket Entry No. 4, Part 1, pages 7-10), petitioner attests that Hayes lied to him about filing certain pre-trial motions and on repeated occasions lied about critical elements of the case, although he does not state which critical elements.  Petitioner also claims that Hayes committed perjury by failing to inform the Court that he and petitioner had irreconcilable differences and that petitioner had fired him in early September, 2000.[4]  Petitioner does not allege that Hayes made any contradictory or false statements to the Court under oath about his relationship with petitioner.  (*Id.*, pages 10-12).  Therefore, he fails to show that Hayes committed perjury.

e. Investigation of and Objections to Prior Convictions

Petitioner contends that Hayes did not investigate the prior offenses (Docket Entry No. 4, Part 2, page 36) and did not object to the damaging and detrimental elements as presented by the State to include enhancements.  (*Id.*, Part 1, page 24).  Specifically, petitioner complains that Hayes did not investigate and therefore, did not object that evidence supporting the prior offenses was insufficient, that the prior offenses used to enhance his sentence were state jail felonies, and that admission of the prior offenses violated state evidentiary rules.  (*Id.*, Part 2, pages 35-37).

---

[4] Petitioner claims that Hayes had a conflict of interest as evidenced by his political postulations and his failure to present numerous defenses at trial.  (Docket Entry No. 4, Part 2, page 22-25).  Petitioner claims that when he sought removal of Hayes as counsel in March, 2001, the state district court refused his request.  (*Id.*, Part 1, page 8).  An indigent defendant is not entitled to have a particular lawyer represent him, or to demand a different appointed lawyer except for good cause.  *See Morris v. Slappy*, 461 U.S. 1 (1983).  The substitution of new appointed counsel is warranted only if the defendant makes a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict.  *See Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970).  Furthermore, a trial court does not abuse its discretion by denying a change of counsel on the day of trial, if the change would require a continuance.  *See Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982).  Petitioner does not indicate that he asked the Court to withdraw Hayes and appoint new counsel after he allegedly "fired" Hayes in September of 2000.  Instead petitioner indicates that he waited until March, 2001, when his trial was set to begin to seek Hayes's withdrawal.

Petitioner's claim regarding the sufficiency of the evidence to support the prior convictions is conclusory; he fails to state in what respect the evidence supporting the prior convictions was insufficient.[5]  The remaining claims are legally frivolous.  The prior offenses were not state jail felonies, as previously discussed, and their remoteness in time to the present conviction did not render them inadmissible under state evidentiary rules for enhancement purposes.  *See Hicks v. State*, 545 S.W.2d 805, 810 (Tex. Crim. App. 1977).

Nevertheless, petitioner maintains that Hayes's failure to object to the introduction of the erroneous admissions of prior convictions contributed to the assessment of punishment, causing prejudicial error.  (Docket Entry No.4, Part 1, pages 26-27).  Petitioner claims the prosecutor had linked only two enhancement cases to petitioner but had not established all priors; therefore, Hayes's failure to object caused due harm.  (*Id.*, page 27).

The record reflects that the state district court admitted, without objection, petitioner's stipulation to evidence of all of the prior convictions alleged by the State, including the offenses alleged in the enhancement paragraphs in the indictment.  (Docket Entries No. 18, Part 19, pages 21-22; No.18, Part 43, pages 14-15).  After the State rested, Hayes questioned petitioner about the convictions.  (Docket Entry No.18, Part 19, pages 21-23).  Petitioner indicated that he understood the jury was entitled to consider the prior convictions in determining what punishment to assess.  (*Id.*, page 23).  Petitioner further testified that he understood that two of them actually made him a habitual offender and the least the jury could give him was twenty-five years on the new offense.  (*Id.*).

---

[5]  Petitioner entered a plea of true to the paragraphs.  (Docket Entries No.18, Part 25, page 8, No.18, Part 19, page 21).  He stipulated to evidence of all the prior convictions alleged by the State.  (Docket Entries No.18, Part 25, pages 21-22; No.18, Part 43, pages 14-15).

Given petitioner's stipulation to the prior offenses and his failure to allege or show that the pen packets were defective or that the State was unable to prove the prior convictions, petitioner fails to show the necessity of an objection to the admission of the prior convictions.  Counsel is not required to lodge futile objections to render effective assistance.  *See Westley v. Johnson*, 83 F.3d 714, 722 (5th Cir. 1996).

f. Cross-Examination of Witnesses

Petitioner complains that Hayes failed to properly cross-examine the State's witnesses. (Docket Entry No.4, Part 1, page 24).  The record, however reflects that Hayes cross-examined the State's witnesses.  (Docket Entry No.18, Part 18, pages 27-28, 29, 32-33, 35).  Moreover, petitioner does not indicate how the cross-examination was improper.

g. No Defense Witnesses

Petitioner contends that Hayes was ineffective because he called no witnesses during the guilt-innocence phase of trial and therefore, brought forth no issues of duress or coercion.  (Docket Entry No.4, Part 1, page 24).  Petitioner, however, does not indicate who Hayes should have called or whether that witness's testimony was favorable and whether he or she would have testified at trial.  *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (noting that to establish a basis for relief on a failure to call witnesses, a petitioner is required to show that their testimony would have been favorable and also that they would have testified at trial).

Moreover, even if Hayes's representation was found to be deficient for failing to call a witness, petitioner still has not shown that he was prejudiced by counsel's performance.  In view of the overwhelming evidence of his guilt as a party to the offense, it is unlikely that he would have been acquitted of the charge of aggregate theft.

h. Courtroom Etiquette

Petitioner claims that Hayes "failed to exhibit even the most common courtroom etiquette of reasonable attentiveness of the happenings in the courtroom." (Docket Entry No.4, Part 1, page 25). The record does not reflect any admonishments by the court of Hayes's inattentiveness and petitioner fails to state any facts that would support such a claim.

i. Time Spent with Petitioner

Petitioner complains that Hayes was ineffective because he spent only fifteen to twenty minutes with petitioner. Length of time spent in consultation, without more, does not establish that counsel was ineffective. *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980).

j. Motion for New Trial

Petitioner complains, without factual support, that Hayes's assistance was deficient and prejudicial because Hayes failed to submit a motion for new trial during a critical state of the trial (Docket Entries No.4, Part 1, pages 25, 27). Petitioner fails to state any facts to show the need for a new trial or how he was prejudiced by Hayes's failure to file such motion.[6]

k. Attempts to Undermine Case

Petitioner claims that Hayes, having been fired in consultation and in open court, attempted to "submarine" petitioner's trial by failing to cross-examine the State's witnesses, call defense witnesses, or even make a final argument. (Docket Entry No.4, Part 1, page 26). As previously discussed, the record reflects that Hayes cross-examined the State's witnesses. It also reflects that Hayes made a closing argument. (Docket Entry No.18., Part 18, pages 40-41).

---

[6] Moreover, the record shows that petitioner filed a *pro se* notice of appeal on March 7, 2001, the day he was sentenced. (Docket Entry No.18, Part 17, page 11). On the same day, the state district court appointed Attorney Henry L. Burkholder to represent petitioner on appeal. (*Id.*, page 12).

Petitioner fails to state any facts that would show that Hayes acted in such a manner as to undermine petitioner's trial.

l. Erroneous Advice

Petitioner maintains that during the punishment phase of trial, Hayes erroneously advised him to answer true to the enhancement paragraphs.  (Docket Entry No.4, Part 1, page 26).  By this claim, petitioner implies that his stipulation to the enhancement paragraphs was involuntary.  Claims that a prisoner entered an involuntary plea of true to enhancement paragraphs "because he was not informed of his right to contest his prior convictions, or of the consequences of his plea" are reviewed under a totality-of the-circumstances test.  *See Ellis v. Lynaugh*, 883 F.2d 363, 366 (5th Cir. 1989).  Petitioner, however, does not indicate in what respect Hayes's advice was erroneous.  Other than the defects previously dismissed, petitioner points to no other defects in the enhancement paragraphs or the pen packets that would show that the prior convictions were inadmissible, that the State would not be able to prove the prior convictions, or that they were not true.  In short, petitioner fails to state why trial counsel's advice to plea true to the enhancement paragraphs was erroneous.

Petitioner further maintains that Hayes told him to confess to the crime "so as not to inflame or question the jury's intelligence."  (Docket Entry No.4, Part 1, page 26).  Petitioner claims that Hayes's advice constitutes ineffective assistance because his confession during the punishment phase of trial "robbed" him forever of any argument that he was actually innocent, a "gateway" claim, "which opens doors and lifts procedural bars for Habeas Corpus litigants."  (*Id.*, Part 2, page 26).  Petitioner explains that he had advanced his innocence throughout the entire trial, but because of Hayes's advice, an actual innocence claim, which would have encompassed a "fundamental miscarriage of justice" claim is forever lost.  (*Id.*).

The record reflects that Hayes's advice to confess to the crime during the punishment phase of trial appears to be based on a strategy that petitioner's candor would perhaps lead the jury to look more favorably upon petitioner when assessing punishment. "Tactical and strategical decisions of counsel 'if based on informed and reasoned practical judgment' will not be second-guessed." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). In this case, the jury heard properly admitted evidence of petitioner's guilt and the sole issue reasonably open to question was the punishment that would be imposed. Therefore, an attempt to mitigate punishment was a realistic trial strategy.

Moreover, petitioner fails to show that such advice was prejudicial; *i.e.*, that the jury would have given him a more favorable sentence had he not confessed. Petitioner's complaint that his confession prejudiced any post-conviction claim of actual innocence in a federal habeas proceeding is without a legal basis. Supreme Court jurisprudence does not support an independent claim for federal habeas relief based on an allegation of actual innocence. *Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999). Although a petitioner whose claims are otherwise barred from consideration as an abuse of the writ may obtain federal habeas review of those claims upon a showing of actual innocence, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 399 (1993); *see also Schlup v. Delo*, 513 U.S. 298, 315-16 (1995). None of petitioner's claims in this habeas petition were barred; therefore, he has no need to advance, and has not advanced, a claim of actual innocence.

m. Mitigating Evidence

Petitioner also maintains that Hayes was ineffective because he offered no mitigating evidence, testimony or defense, nor did he request a pre-sentence mental evaluation during the punishment phase of trial.  (Docket Entry No.4, Part 1, page 26).

Petitioner mis-states the record.  During the punishment hearing, Hayes offered mitigating evidence of petitioner's rehabilitation following several incarcerations, an account of petitioner's history of drug addiction, and petitioner's version of his involvement in the aggregate theft, including his fear of and dependance on his partner and drug dealer, Mike Williams.  (Docket Entry No.18.; Part 19, pages 22-29).  Hayes also elicited mitigating evidence from petitioner that petitioner gave most of the money from the illegal transactions to Williams.  (*Id.*, page 29).

In addition, petitioner fails to state the necessity of a pre-sentence mental evaluation.  Petitioner's mental state was not an issue or a defense in this case.  "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical.  If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interest of his client by attempting a useless charade."  *United States v. Cronic*, 466 U.S. 648, 657 n.19 (1984).

n. Failure to Instruct Jury on Extraneous Offenses

Petitioner complains that Hayes failed to have the jury properly instructed about such prejudicial extraneous offenses and bad acts per section 37.07(3)(a) of the Texas Code of Criminal Procedure.  (Docket Entry No.4, Part 1, page 26-27).  Section 3(a) of Article 37.07 of the Texas Code of Criminal Procedure requires that extraneous bad acts and offenses may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that such acts and offenses are attributable to the defendant.  *Huizar v. State*, 12 S.W.3d 479, 483 (Tex. Crim. App. 2000).  Under Texas law, a trial court is statutorily required, but not constitutionally required, to instruct a jury *sua sponte* in the punishment phase of trial in a non-capital case, that it may not

consider extraneous-offense evidence unless it finds the extraneous offenses have been proven beyond a reasonable doubt. *Id.* at 484-85. A trial court, however, is not required to give such an instruction on prior convictions. *See Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004).

In this case, only evidence of petitioner's prior convictions and his stipulation to the convictions were admitted at trial. Therefore, under state law, petitioner's trial counsel was not required to request an article 37.07(a) instruction.

o. Affirmative Links Doctrine

According to petitioner, the State failed to prove that he was "affirmatively linked" to the contraband in this case. In other words, petitioner contends the State failed to show that he knew of and controlled the forged and fraudulent documents used to commit aggregate theft of the two properties. (Docket Entry No.4, Part 1, pages 28-29). Petitioner further alleges that the State also failed to offer proof of the chain of custody of the documents, thereby linking the documents to petitioner. (*Id.* pages 29-30). Petitioner speculates that his partner Mike Williams must have informed the State of petitioner's link to the documents but the State found no such links to petitioner during its investigation. (*Id.*). He further speculates that he was convicted on the basis of "various affidavits and hearsay testimonies," presumably those given by Mike Williams. (*Id.*). Petitioner complains that Hayes was ineffective because he failed to object to this inadmissible evidence on the ground that the State had failed to affirmatively link him to the documents and because he failed to object to the admission of inadmissible identification evidence. (*Id.*, page 30). Petitioner attributes Hayes allegedly deficient performance to Hayes's alleged failure to have a firm command of the case and the law. (*Id.*, page 28).

Petitioner does not specify the evidence that was inadmissible nor the testimony to which Hayes should have voiced an objection.  The record reflects sufficient evidence,[7] as the state courts found on direct appeal, to support petitioner's conviction for aggregate theft[8] under the law of the parties.[9]  *Grant v. State*,  No.14-01-00475-CR (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd); (Docket Entry No.18, Part 54, pages 4-6).  The jury heard testimony from the true owners of the two houses, both of whom testified that they did not transfer the ownership of the properties to petitioner. (Docket Entry No.18, Part 18, pages 28-29, 33-35).  The jury also heard testimony from the escrow officers, who facilitated the fraudulent sale of the two properties from petitioner to his partner Mike Williams.  (*Id.*, pages 17-28; 30-33).  Both officers testified how they learned the transfer of the properties from the true owners was fraudulent and described the apparent mistakes on the warranty deeds, which their examiners had missed in their initial review.  Both identified petitioner as the purported owner and seller of the properties.  Both testified to the loss that their respective title companies incurred as a result of the fraudulent transactions.  (*Id.*).  The jury also heard testimony from a fraud examiner with the Harris County District Attorney's Office, who testified to specific

---

[7]  A federal court tests the sufficiency of evidence in a federal habeas review of a state court conviction under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction if when viewed in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 319.  The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.  *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).  Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

[8]  A person commits theft if he unlawfully appropriates property without the owner's consent and with intent to deprive the owner of the property.  TEX. PEN. CODE ANN. § 31.03(a), (b)(1) (Vernon Supp. 2006).  The element of intent may be inferred from the actions or conduct of the defendant.  *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989).

[9]  Under the law of the parties, "a person is criminally responsible for an offense committed by the conduct of another if . . . he act[s] with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."  TEX. PEN. CODE ANN. § 7.02 (Vernon 2003).

21

defects in the documents transferring ownership from the true owners to petitioner and to suspicious information in the loan applications.   The investigator also identified petitioner by his driver's license as payee on the checks from the fraudulent sale of the two properties.   (*Id.*, pages 35-39). A rational jury could have found from this evidence that, in each case, petitioner unlawfully appropriated the property without the owner's consent and with intent to deprive the owner of the property.

To the extent that petitioner complains that Hayes was ineffective for failing to object to this evidence on the ground that it was not direct evidence of an affirmative link to the fraudulent documents, his claim is without merit.   "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

p. Chain of Custody

Petitioner complains that Hayes's representation was ineffective because he did not voice an objection to the State's failure to show petitioner's role in the chain of custody of the forged documents and to mount a viable defense.   (Docket Entry No.4, Part 1, page 32).   Once again, petitioner postulates that the State did not prove the elements of aggregate theft beyond a reasonable doubt and faults trial counsel for failing to attack the sufficiency of the evidence.   (*Id.*, pages 33-34). As previously discussed, the evidence was sufficient to support a conviction for aggregate theft in this case and trial counsel's failure to object on "chain-of-custody" grounds does not constitute deficient performance.   In light of the overwhelming evidence of his guilt, petitioner fails to show how he was prejudiced by Hayes's failure to voice such an objection.

q. Failure to Conduct An Independent Investigation

Petitioner claims that Hayes failed to conduct a thorough and independent investigation and therefore, failed to mount a viable defense to the prosecutor's case.   (Docket Entry No.4, Part 1,

pages 34-38).  Petitioner contends that he asked Hayes to "gather expert witnesses for testimonies concerning the forgery/reproduction of documents and for mental evaluation, but to no avail." (*Id.*, page 23).  Petitioner maintains that "this cause warranted Hayes'[s] request for an appointed investigator." (*Id.*, page 36).  Petitioner claims Hayes did not seek the appointment of such an investigator but after reading the State's file, Hayes purposely advanced no defense.  (*Id.*).

Petitioner maintains that had Hayes conducted a thorough investigation he would have uncovered mitigating evidence, obtained petitioner's complete statement, procured an expert witness, prepared petitioner to testify, and processed petitioner's mental evaluation with respect to his drug and alcohol addiction at the time the crime was committed. (*Id.*)  Moreover, petitioner maintains, an investigation would have uncovered the criminal background of all of the State's witnesses, especially Mike Williams, who petitioner alleges was a confidential informant.  (*Id.*).

Petitioner contends that he gave Hayes a complete list of character witnesses but Hayes refused to accept it.  (*Id.*).  Petitioner also contends that Hayes should have sought out and served subpoenas on Lacy George and Barbra Sharp, who had knowledge of the crime.  (*Id.*).  Petitioner further contends that Hayes should have sought an expert who could elaborate "the parameters of the financial documents."  (*Id.*, pages 36-37).

Under *Strickland*, a defense attorney "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Soffar v. Dretke*, 368 F.3d 441, 473 (5th Cir. 2004), *amended in part on other grounds on rehearing*, 391 F.3d 703 (5th Cir. 2004) .  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* citing *Strickland*, 466 U.S. at 690-91.  "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already

known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). On the other hand, a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

The record is silent with respect to the quantum of evidence known to Hayes; presumably, the State's file contained the same evidence presented during the guilt-innocence phase of trial. According to petitioner, Hayes determined there was little need to investigate further after reviewing the State's file. In his sworn statement, petitioner attests that Hayes "would not give me any additional information except to say that he had the D.A.'s file, as well as spoken to him and said he felt I was guilty by the evidence." (Docket Entry No.4, Part 1, page 8).

Even if further investigation was warranted, petitioner does not indicate what favorable evidence Hayes might have discovered had he employed an investigator, interviewed Lacy George or Barbra Sharp and an unnamed character witness, procured an expert to evaluate the financial documents, or employed a mental health professional to evaluate petitioner's drug and alcohol addiction at the time of the crime.

The record is also silent as to whether Hayes prepared petitioner to testify during the punishment hearing. The record, however, reflects an intentional decision by Hayes and petitioner to limit his testimony to the punishment hearing. (Docket Entry No. 18, Part 18, page 40). The record further reflects that through his counsel's questioning, petitioner gave a complete statement to the jury about his involvement in the crime, the same statement that he avers is true in his sworn statement attached to the memorandum in support of his habeas petition. (Docket Entries No.18, Part 19, pages 24-30; No.4, page 7).

In short, petitioner fails to show that Hayes rendered ineffective assistance because he failed to conduct an investigation.

r. Political Arena

Next, petitioner claims that Hays attempted to politicize the trial by privately expressing his private political views regarding the trial participants, *i.e.*, the district attorney's office and the state district court, and their empathy or lack thereof, for white collar criminals.  (*Id.*, page 39; Part 2, page 2).  Petitioner does not allege that Hayes espoused these views, or any other political agenda at any time before the state district court or the jury.  Therefore, he fails to show how Hayes's expression of his private thoughts and opinions to petitioner prejudiced the outcome of the trial.

s. Failure to Conduct Discovery

Petitioner alleges that Hayes failed to conduct a full discovery of evidence in the State's file. A liberal construction of petitioner's claim under this section is as follows:  Mike Williams, petitioner's partner in the crime, gave a statement confessing to his responsibility in the commission of the aggregate theft.  (Docket Entry No.4, Part 2, page 3).  Petitioner alleges that because Hayes failed to conduct a full discovery, the State suppressed Williams's statement in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and intentionally withheld from the jury information about Williams's participation in the offense.  (*Id.,* Part 2, page 3; Part 1, page 24).

Petitioner speculates that Williams "had turned State's evidence and confidential informant," and had intended from the beginning to implicate petitioner in the crime.  (*Id.*, page 4).  Petitioner further speculates that prosecutors acted on Williams's felonious and erroneous statement and manufactured a crime against him, "by association and embellishments."  (*Id.*; page 5).  Petitioner alleges by his status as a confidential informant, Williams somehow became an agent of the State

and a crucial part of the prosecution team, and that by his actions or confession, entrapped petitioner or allowed the State to entrap petitioner into committing the offense.  (*Id.* pages  5-9).

Petitioner complains that because Hayes did not discover Williams's statement, he did not raise an entrapment defense or present any other mitigating evidence at trial such as coercion or duress, and thus, rendered ineffective assistance of counsel.  (Docket Entry No.4, Part 2, page 3). He further complains that Hayes was ineffective because he did not call Williams to testify.  (*Id.*; page 16).

The facts, as alleged by petitioner, do not give rise to an entrapment defense.  Entrapment is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense.  TEX. PEN. CODE ANN. § 8.06 (Vernon 2003).  Under the facts of this case, Mike Williams, petitioner's partner in the crime, did not act as an agent of the State by giving a written statement, and certainly could not induce petitioner to commit a crime by a statement that was given after the crime's commission.

Likewise, the facts, or lack thereof, do not give rise to a *Brady* claim.  To establish a *Brady* claim, the petitioner must demonstrate: (1) the prosecutor suppressed evidence, (2) favorable to the defense, and (3) material to guilt or punishment.  *Brady*, 373 U.S. at 87.  The suppressed evidence is material if there is "a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1995).

Williams's statement is not in the record.  Assuming petitioner's speculation about the statement is true, it would not be favorable to the defense.  Even if the statement supported the testimony that petitioner gave during the punishment hearing, petitioner fails to show that statement

would be material to his guilt or punishment or that the outcome of the trial would have been different.

Moreover, petitioner complaint that Hayes should have called Williams to testify is without merit.  Petitioner fails to show that Williams's testimony would be favorable or that he would have testified at trial.  *See Boyd v. Estelle*, 661 F.2d 381, 390 (5th Cir. 1981) (noting allegations of what a witness would have testified are largely speculative).

Accordingly, petitioner's pleadings fail to show that the State violated *Brady*, that the State via Williams entrapped him, that his trial and appellate counsel were ineffective for failing to raise the *Brady* issue, and that his trial counsel was ineffective for failing to raise the defense of entrapment or to present other mitigating evidence, such as Williams's testimony or statement.

t. Identification of the Accused/Abuse and Ramifications

Petitioner complains that the state district court erred in admitting in-court identification testimony because the City of Houston Police Department used an impermissibly suggestive procedure to identify petitioner before trial.  (Docket Entry No.4, Part 2, pages 17-21).  Petitioner speculates that witnesses identified petitioner before trial from a single photograph, shown to them by City of Houston police officers.  (*Id.*).  Petitioner maintains that his trial and appellate attorneys were ineffective because they failed to challenge the admission of identification testimony on such grounds.  (*Id.*).

Evidence of pre-trial identification is inadmissible only if the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood or irreparable misidentification.  *Simmons v. United States*, 390 U.S. 377, 384 (1968).  The record here does not reflect any evidence of a pre-trial identification by any witness from a single police photograph or

any other means.[10]  Therefore, petitioner fails to show that the performance of his trial and appellate counsel was deficient or that he was prejudiced by their failure to raise the issue at trial and on appeal.

u. Failure to Establish Trust and Confidence with Client

Petitioner contends that Hayes had a technical conflict of interest because, as appointed counsel, he represented both petitioner and the State of Texas.  (Docket Entry No.4, Part 2, pages 22- 23).  Petitioner queries why else would Hayes accept the State's file as true, offer no defense, lie to petitioner, make disparaging remarks to petitioner's fiancee,[11] and forget to tell the Court that petitioner had fired him.  (*Id.*).  With the exception of the disparaging remark to petitioner's fiancee, the Court has addressed petitioner's complaints regarding the effectiveness of his trial counsel and found no deficiency or prejudice.  Petitioner fails to state any facts that would give rise to a claim that Hayes represented both petitioner and the State of Texas by his appointment.  Furthermore, petitioner has not pointed to any evidence in the record  and the Court has found none, to support petitioner's claim that he sought Hayes's withdrawal or that he was in any way dis-satisfied with Hayes's representation.

v. Malfeasance via the Administration of Egregious and Erroneous Advice

Petitioner next complains that Hayes rendered ineffective assistance (1) by coaxing him into confessing his guilt under the guise of not inflaming or questioning the jury's intelligence; (2) by not advising petitioner on collateral rights of appeal or attacks on the conviction; and, (3) by telling

---

[10]   Petitioner was identified at trial by one escrow officer from his appearance in her office during closing.  (Docket Entry No.18, Part 18, page 21).  Three witnesses, including the escrow officer, identified petitioner from a photocopy of his driver's license on the real estate documents that they handled.  (*Id.*, pages 22, 31, 38).

[11]   Petitioner claims that Hayes told petitioner's fiancee that "he knew he was being conned." (Docket Entry No.4, Part 1, page 9).

petitioner that there was no such thing as a speedy trial.  The Court has previously addressed the first and third allegations and found that petitioner failed to defeat the state court's findings.  For the reasons to follow, the Court finds petitioner's second allegation is without legal merit.

Petitioner maintains that Hayes failed to inform him of plea offers and the right to appeal his conviction and his right to collaterally attack the conviction.  (Docket Entry No.4, Part 2, page 26).  Petitioner claims that at one point Hayes told him that he had no right to an appeal.  (*Id.*).  However, petitioner attests in a sworn statement attached to his memorandum that on May 24, 2000, Hayes told him the District Attorney was offering twenty-five years.  (Docket Entry No.4, Part 1, page 8).  Moreover, petitioner filed a notice of appeal on the date that he was sentenced and he has timely sought both state and federal habeas relief; therefore, he fails to show that he was prejudiced by Hayes' alleged omissions.

## C. Ineffective Assistance of Counsel on Appeal

An accused is constitutionally entitled to effective assistance of counsel on direct appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  Claims of ineffective assistance of counsel are determined by the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

While conceding that his appellate counsel, Henry Burkholder, went "above and beyond the call of duty" when he submitted the petition for discretionary review, petitioner complains that Burkholder rendered ineffective assistance on appeal because he did not tell petitioner of "collateral attacks o[r] motions for rehearings."  (Docket Entry No.4, Part 2, page 30).  The state habeas court found that petitioner failed to show that his appellate counsel was ineffective because petitioner failed to show that counsel had a duty to inform him about motions for rehearing.  (Docket Entry No.18, Part 24, page 30).  Because petitioner fails to show how he was prejudiced by Burkholder's

alleged failure to inform him of such post-judgment measures, he cannot defeat the state habeas court's finding.

Petitioner also complains that Burkholder did not submit all of the grounds to the state appellate court that petitioner requested; therefore, petitioner submitted these issues to the state appellate court in his supplemental brief.  Petitioner contends the state appellate court refused to consider the brief, thereby denying him a fair trial.  (Docket Entry No.4, Part 2, page 30).  In addition, petitioner complains that Burkholder did not challenge the alleged *Brady* violation (Docket Entry No.4, Part 2, page 12) or the purported pre-trial identification evidence on appeal.  (Docket Entry No.4, Part 2, pages 17-21).

Because an appellate counsel is not required to raise every nonfrivolous claim on appeal, but may select from among them in order to maximize the likelihood of success on appeal, it is difficult to demonstrate the incompetency of counsel when a brief on the merits is filed.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  The presumption of competency is overcome "'only when ignored issues are clearly stronger than those presented.'"  *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Petitioner must also demonstrate prejudice, that is, he must show a reasonable probability that, but for his counsel's failure to file claims on the ignored issues, he would have prevailed on his appeal.  *Id.* at 286.

To the extent that petitioner complains that Burkholder did not challenge the issues raised in his supplemental brief, *i.e.* the illegality of his sentence, the ineffectiveness of trial counsel, and the speedy trial violation, (Docket Entry No.18, Part 52, pages 34-41), petitioner fails to show the likelihood of success of these issues on appeal given this Court's disposition of these issues.  Moreover, as previously discussed, petitioner's claims with respect to the alleged *Brady* violation and suggestive pre-trial identification evidence are without merit.  Accordingly, petitioner fails to

show that these issues were clearly stronger than the ones Burkholder presented on appeal; moreover, petitioner fails to show that he would have prevailed on these claims on appeal.

Furthermore, petitioner fails to show that he was prejudiced by state appellate court's refusal to consider his supplemental brief on appeal. The law is well settled that while an accused in a criminal matter may conduct his case *pro se* or by counsel, he has no right to a hybrid representation, partly by himself and partly by counsel. *Neal v. State*, 870 F.2d 312, 315-16 (5th Cir. 1989). Because appellate attorney Burkholder, petitioner's appointed representative, filed a brief on appeal, petitioner was not entitled to file a *pro se* supplemental brief and the appellate court was not required to consider it.

Petitioner fails to defeat the state court's findings that his appellate counsel was not ineffective and he fails to state a Sixth Amendment claim that he was denied the effective assistance of counsel on appeal.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim

of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding, the Court ORDERS the following:

1.  Respondent's motion for summary judgment (Docket Entry No.17) is GRANTED.

2.  Petitioner's petition for federal habeas relief is DENIED.

3.  A certificate of appealability is DENIED.

4.  This habeas action is DISMISSED with prejudice.

5.  All pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

Signed at Houston, Texas, this 21st day of September, 2006.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE